## UNITED STATES DISTRICT COURT

### DISTRICT OF CONNECTICUT

GISELE REESE,

Plaintiff,

v.

MILFORD HEALTH & REHABILITATION CENTER

and NATIONAL HEALTH CARE ASSOCIATES, INC.,

Defendants.

Case No.: _____

**CIVIL COMPLAINT**

**I. PARTIES**

1. Plaintiff Gisele Reese is an adult resident of the State of Connecticut.

2. Defendant Milford Health & Rehabilitation Center is a healthcare and rehabilitation facility operating in the State of Connecticut.

3. Defendant National Health Care Associates, Inc. is the parent and/or managing entity responsible for hiring practices, background-check policies, and employment decisions at Milford Health & Rehabilitation Center.

4. At all relevant times, Defendants acted jointly and in concert as Plaintiff's employer.

**II. JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and all other applicable federal statutes.

6. Venue is proper in this District because the events giving rise to this action occurred in the State of Connecticut.

## III. FACTUAL ALLEGATIONS

7. Plaintiff applied for employment with Milford Health & Rehabilitation Center and advanced through the hiring process.

8. Plaintiff was required to undergo a background check as part of Defendants' hiring procedures.

9. Plaintiff's criminal history record is accurate and reflects a single non-violent charge of weapon in a motor vehicle, not a firearm offense, and does not involve a gun charge.

10. Defendants and their agents repeatedly characterized Plaintiff's record as involving "multiple convictions" without identifying dates, dispositions, or the significant time lapse since the offense.

11. Defendants failed to conduct an individualized assessment of Plaintiff's background, rehabilitation, and employment history as required under Connecticut law.

12. Plaintiff possesses a valid Certificate of Employability issued by the State of Connecticut, establishing that Plaintiff does not pose a public safety risk.

13. Defendants failed to meaningfully consider Plaintiff's Certificate of Employability.

14. Defendants failed to consider the time lapse between Plaintiff's past charge and the present hiring decision.

15. Defendants failed to consider Plaintiff's successful prior employment history in healthcare settings.

16. On or about August 2022, Plaintiff was informed that she would not be hired.

17. Defendants' non-hire decision was based on a distorted and misleading interpretation of Plaintiff's background rather than an individualized assessment.

18. Defendants' conduct caused Plaintiff economic harm, emotional distress, and reputational injury.

## IV. RESERVATION OF RIGHTS

19. Plaintiff expressly reserves the right to pursue additional civil claims, including Title VII discrimination claims, as Phase II of this litigation following completion or revival of related administrative proceedings. This action constitutes Phase I only.

## V. CAUSES OF ACTION

### COUNT ONE – NEGLIGENCE

20. Defendants owed Plaintiff a duty to act with reasonable care in evaluating her background and employment qualifications.

21. Defendants breached that duty by mischaracterizing Plaintiff's record and failing to conduct an individualized assessment.

22. Plaintiff suffered damages as a direct and proximate result of Defendants' conduct.

### COUNT TWO – FALSE LIGHT / DEFAMATION

23. Defendants published misleading characterizations of Plaintiff's criminal history.

24. These statements portrayed Plaintiff as dangerous and unsuitable despite contrary evidence.

25. Plaintiff suffered reputational harm and emotional distress.

### COUNT THREE – VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES

26. Defendants failed to comply with Connecticut laws governing background checks and consideration of rehabilitation.

27. Plaintiff suffered economic and non-economic damages as a result.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Award compensatory damages;

B. Award consequential damages;

C. Award emotional distress damages;

D. Award costs and interest;

E. Grant such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

PLAINTIFF, PRO SE

Gisele Reese

165 DeWitt Street, Unit 206

New Haven, CT 06519

203-804-5539

giselereese2@gmail.com

# EXHIBIT A

Email to Shenida Oliver requesting background check and non-hire explanation.

Attached hereto.

 **Gisele Reese** 

Re: Interview - Milford Health & Rehab

From giselereese2@gmail.com
To Oliver, Shenida
Sep 10, 2022 at 3:40 PM ⌄

Good evening Shenida
I'm writing to request documentation from Jocelyn Digro
for a copy of my background check and a letter for not
hire any further question please feel free to contact me
thanks

Sent from Yahoo Mail for iPhone

On Wednesday, August 10, 2022, 3:28 PM, Oliver, Shenida
<soliver@nathealthcare.com> wrote:

Good Afternoon

Thank you for your interest in the CNA position with Milford
Health and Rehab Center.

Your interview is scheduled:
Friday August 12th @ 10 am
Address: 195 Platt St.
Milford, CT

You will be meeting with Jocelyn Digro
Please wear a face covering when entering the building.

If you have any questions please feel free to reach out to
me.

   
Delete        Archive        Move        Reply        More

# EXHIBIT B

SambaCare August 11, 2022 shift-offer email.

Attached hereto.



On C.

**CNA**Milford Health Care Center National 195 ☆
Platt Street Milford, CT 06460

From fivestarcare+7dfd537df...5cda6+9A@clearcaremail.com
To giselereese2@gmail.com
Aug 11, 2022 at 9:41 PM ⌄

Milford Health Care Center National is in need of CNA to work 11pm-7am shift at today 08/11. Kindly confirm if you are available. Thank you!

---

On Call | oncall@sambacare.com

---

unsubscribe

| 🗑 Delete | ✉ Archive | ↱ Move | ↩ Reply | ••• More |

# EXHIBIT C

Full Police Record – State of Connecticut Criminal History.

Attached hereto.



**STATE OF CONNECTICUT**
**DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC**
**PROTECTION**
**DIVISION OF STATE POLICE**
**Bureau of Identification**



07/29/2022
Department of Public Health (DPH) - Long Term Care Providers
410 Capitol Avenue
Hartford CT 06134

Search Type:                      Fingerprint Supported Search
Date of Inquiry:                  07/25/2022
Transaction Number:               ASPA82022072900021
Record Status:                    RECORD FOUND - STATE OF CT

Please be advised that based on the information provided, a search of the files of the Connecticut State Police
Bureau of Identification (SPBI) for a state criminal conviction record on subject:

NAME - GISELE REESE (████/1974)

has resulted in a record found.  These results can be found on the following page(s).

Please be advised that criminal history record information may change daily due to: erasures, corrections,
pardons, or other modifications to individual criminal history records. The accuracy of the information cannot
be guaranteed, except with respect to the date the information is disclosed or obtained.  The subject and/or
requester assumes all liability in the use of the data obtained from this database.

State Police Bureau of Identification
1111 Country Club Road
Middletown, CT 06457
Phone: (860) 685-8480 Fax: (860) 685-8361
**An Affirmative Action/Equal Opportunity Employer**

```
CONNECTICUT STATE BUREAU OF IDENTIFICATION - NAME/DOB SEARCH RESPONSE

********************   CRIMINAL HISTORY RECORD   ********************

***************************  Introduction  ***************************

This rap sheet was produced in response to the following request:

State Id Number         00674539
Purpose Code
Attention               SABIS-FlexCheck

The information in this rap sheet is subject to the following caveats:

CONVICTED FELON


**************************  IDENTIFICATION  **************************

Subject Name(s)

REESE,GISELE
REESE,GISELLE   (AKA)

Subject Description

                        State Id Number
                        00674539

                        Driver's License Number
                        ██████████

Sex                     Race
Female                  Black

Height                  Weight                   Date of Birth
505                     182                      1974-████

Hair Color              Eye Color
Brown                   Brown

Place of Birth
STAMFORD, Connecticut

RESIDENCE
Residence as of         2010-07-23
Address                 261 ELY AVE APT 16 1D
                        NORWALK, CT 06854

Residence as of         2008-12-08
Address                 261 ELY AVE  16 1D
                        NORWALK, CT 06854

Residence as of         2008-08-22
Address                 261 ELY AVE 16 1D
                        NORWALK, CT 06854

Residence as of         2007-12-11
Address                 261 ELY AVE BLDG 16 APT 1
                        NORWALK, CT 06854

Residence as of         2006-11-30
Address                 261 ELY AVE BLDG 16 APT 1
                        NORWALK, CT 06854

Residence as of         2005-11-18
Address                 261 ELY AVENUE APT 16 1D
                        STAMFORD, CT 06854
```

```
Residence as of          2003-08-07
Address                  38A CONN AVE
                         STAMFORD, CT 06902

Residence as of          2000-08-05
Address                  38 CONN AVE
                         STAMFORD, CT 00000

Residence as of          1998-10-16
Address                  300 TRESSER BLVD
                         STAMFORD, CT 00000

Residence as of          1997-01-24
Address                  133 PRESSPRICH ST 7 H
                         STAMFORD, CT

Residence as of          1996-11-25
Address                  133 PRESSPRICH ST 7 G
                         STAMFORD, CT

Residence as of          1995-04-13
Address                  11 PRESSPRICH STREET
                         STAMFORD, CT

Residence as of          1993-10-06
Address                  111 PRESSPRICH STREET
                         STAMFORD, CT


=============================== Arrest Cycle 009  ===============================
Arrest Caveat          MISDEMEANOR HANDGUN DISQUALIFIER

---------------------- Judicial Arrest ----------------------------------
Arrest Date              2010-07-23
Arrest Case Number       10-37212
Arresting Agency         CT0010300  P.D. NORWALK COMMUNICATIONS

Subject Name(s)          REESE, GISELE
UAR Number: 08641447
Arresting Agency Name: LOCAL POLICE NORWALK
Place of Arrest: 103 - NORWALK
-------------------------------------------------------------------------
Court Case Number        S20N-CR10-0126552-S
Subject Name(s)          REESE, GISELE

Court Location: S20N - Norwalk G.A. 20
Fingerprint Supported: Yes
Bond Type: Professional Surety
Bond Amount: $25,000.00
-------------------------------------------------------------------------
Sentencing               (Arrest Cycle 009)
      Charge Description Place of Offense: 103 - NORWALK
      Charge Description Date of Offense: 07/15/2010
            Statute      INCITING RIOT (53a-178)
            Counts       1
            Severity     Misdemeanor
            Disposition  ( 2011-01-10; Guilty)

            Sentence     9 MONTH(S) JAIL,  Consecutive
-------------------------------------------------------------------------
Sentencing               (Arrest Cycle 009)
      Charge Description Place of Offense: 103 - NORWALK
      Charge Description Date of Offense: 07/15/2010
            Statute      INTRFERE/RESIST (53a-167a)
            Counts       1
            Severity     Misdemeanor
            Disposition  ( 2011-01-10; Guilty)

            Sentence     9 MONTH(S) JAIL,  Concurrent
=============================== Arrest Cycle 008  ===============================
```

```
Arrest Caveat            MISDEMEANOR HANDGUN DISQUALIFIER


---------------------- Judicial Arrest -----------------------------------
Arrest Date              2008-12-08
Arrest Case Number       08-67323
Arresting Agency         CT0010300  P.D. NORWALK COMMUNICATIONS


Subject Name(s)          REESE, GISELE
Summons Number: MB520641
Arresting Agency Name: LOCAL POLICE NORWALK
Place of Arrest: 103 - NORWALK
Family Violence: Yes
-------------------------------------------------------------------------
Court Case Number        S20N-CR08-0121144-S
Subject Name(s)          REESE, GISELE

Court Location: S20N - Norwalk G.A. 20
Bond Type: Promise to Appear
-------------------------------------------------------------------------
Sentencing               (Arrest Cycle 008)
     Charge Description Place of Offense: 103 - NORWALK
     Charge Description Date of Offense: 12/08/2008
             Statute   THREATENING 2 (53a-62)
             Counts    1
             Severity  Misdemeanor
          Disposition  ( 2009-04-01; Guilty)

          Sentence   4 MONTH(S) JAIL
=============================== Arrest Cycle 007  ========================
Arrest Caveat            CONVICTED FELON


---------------------- Judicial Arrest -----------------------------------
Arrest Date              2008-08-22
Arrest Case Number       0808220049
Arresting Agency         CT0013500  P.D. STAMFORD 911 CENTER


Subject Name(s)          REESE, GISELE
UAR Number: 09070188
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------- Judicial Arrest -----------------------------------
Arrest Date              2010-08-20
Arresting Agency         CT0013500  P.D. STAMFORD 911 CENTER


Subject Name(s)          REESE, GISELE
UAR Number: 06823746
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
-------------------------------------------------------------------------
Court Case Number        S01S-CR08-0164350-S
Subject Name(s)          REESE, GISELE

Court Location: S01S - Stamford G.A. 1
Fingerprint Supported: Yes
Bond Type: Professional Surety
Bond Amount: $1,000.00
Sentence Modification Disposition Date: 01/06/2011
-------------------------------------------------------------------------
Sentencing               (Arrest Cycle 007)
     Charge Description Place of Offense: 135 - STAMFORD
     Charge Description Date of Offense: 08/22/2008
             Statute   HARASSMENT 2 (53a-183)
             Counts    1
             Severity  Misdemeanor
          Disposition  ( 2009-07-28; Guilty)

          Sentence   3 MONTH(S) JAIL,  Concurrent
-------------------------------------------------------------------------
Sentencing               (Arrest Cycle 007)
     Charge Description Place of Offense: 135 - STAMFORD
     Charge Description Date of Offense: 08/22/2008
```

```
                         Statute   WPN IN MTR VEH (29-38)
                         Counts    1
                        Severity   Felony
                     Disposition   ( 2009-07-28; Guilty)

             Sentence   3 YEAR(S) JAIL,  4 MONTH(S) SUSP,  3 YEAR(S) PROB
--------------------------------------------------------------------------
Sentencing                        (Arrest Cycle 007)
     Charge Description Place of Offense: 135 - STAMFORD
     Charge Description Date of Offense: 08/04/2010
                         Statute   PROBATION VIOL (53a-32)
                         Counts    1
                        Severity   Not Classified
                     Disposition   ( 2011-01-06; Guilty)

             Sentence   18 MONTH(S) JAIL,  Concurrent
============================== Arrest Cycle 006 ==============================
Arrest Caveat               MISDEMEANOR HANDGUN DISQUALIFIER

---------------------- Judicial Arrest -------------------------------------
Arrest Date                 2007-12-11
Arrest Case Number          07-65079
Arresting Agency            CT0010300  P.D. NORWALK COMMUNICATIONS

Subject Name(s)             REESE, GISELE
UAR Number: 08635623
Arresting Agency Name: LOCAL POLICE NORWALK
Place of Arrest: 103 - NORWALK
Family Violence: Yes
---------------------- Judicial Arrest -------------------------------------
Arrest Date                 2008-12-11
Arrest Case Number          07-65079
Arresting Agency            CT0010300  P.D. NORWALK COMMUNICATIONS

Subject Name(s)             REESE, GISELE
UAR Number: 08637832
Arresting Agency Name: LOCAL POLICE NORWALK
Place of Arrest: 103 - NORWALK
Family Violence: Yes
--------------------------------------------------------------------------
Court Case Number           S20N-CR07-0117876-S
Subject Name(s)             REESE, GISELE

Court Location: S20N - Norwalk G.A. 20
Fingerprint Supported: Yes
Bond Type: Professional Surety
Bond Amount: $5,000.00
Sentence Modification Disposition Date: 07/15/2009
--------------------------------------------------------------------------
Sentencing                        (Arrest Cycle 006)
     Charge Description Place of Offense: 103 - NORWALK
     Charge Description Date of Offense: 12/11/2007
                         Statute   THREATENING 2 (53a-62)
                         Counts    1
                        Severity   Misdemeanor
                     Disposition   ( 2008-03-19; Guilty)

             Sentence   1 YEAR(S) JAIL,  1 YEAR(S) SUSP,  2 YEAR(S) PROB
--------------------------------------------------------------------------
Sentencing                        (Arrest Cycle 006)
     Charge Description Place of Offense: 103 - NORWALK
     Charge Description Date of Offense: 08/22/2008
                         Statute   PROBATION VIOL (53a-32)
                         Counts    1
                        Severity   Not Classified
                     Disposition   ( 2009-04-01; Guilty)

             Sentence   4 MONTH(S) JAIL,  Concurrent
============================== Arrest Cycle 005 ==============================
Arrest Caveat               MISDEMEANOR CONVICTION
```

```
----------------------- Judicial Arrest -----------------------------------
Arrest Date                  2006-11-30
Arresting Agency             CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)              REESE, GISELE
UAR Number: 09064720
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
----------------------- Judicial Arrest -----------------------------------
Arrest Date                  2007-12-20
Arrest Case Number           0712200130
Arresting Agency             CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)              REESE, GISELE
UAR Number: 09068041
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
----------------------- Judicial Arrest -----------------------------------
Arrest Date                  2008-12-11
Arrest Case Number           13506-11300170
Arresting Agency             CT0010300  P.D. NORWALK COMMUNICATIONS

Subject Name(s)              REESE, GISELE
UAR Number: 08637833
Arresting Agency Name: LOCAL POLICE NORWALK
Place of Arrest: 135 - STAMFORD
----------------------- Judicial Arrest -----------------------------------
Arrest Date                  2010-08-20
Arresting Agency             CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)              REESE, GISELE
UAR Number: 06823747
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------------------------------------------------------------
Court Case Number            S01S-CR06-0157793-S
Subject Name(s)              REESE, GISELE

Date of Rearrest: 12/20/2007
Court Location: S01S - Stamford G.A. 1
Fingerprint Supported: Yes
Bond Type: Professional Surety
Bond Amount: $5,000.00
Sentence Modification Disposition Date: 01/06/2011
---------------------------------------------------------------------------
Sentencing              (Arrest Cycle 005)
     Charge Description Place of Offense: 135 - STAMFORD
     Charge Description Date of Offense: 08/04/2010
          Statute  PROBATION VIOL (53a-32)
          Counts   1
          Severity  Not Classified
      Disposition  ( 2011-01-06; Guilty)

         Sentence  1 YEAR(S) JAIL,  Concurrent
---------------------------------------------------------------------------
Sentencing              (Arrest Cycle 005)
     Charge Description Place of Offense: 135 - STAMFORD
     Charge Description Date of Offense: 11/30/2006
          Statute  INTRFERE/RESIST (53a-167a)
          Counts   1
          Severity  Misdemeanor
      Disposition  ( 2008-04-02; Guilty)

         Sentence  1 YEAR(S) JAIL,  1 YEAR(S) SUSP,  3 YEAR(S) PROB,
                   Concurrent
---------------------------------------------------------------------------
Sentencing              (Arrest Cycle 005)
     Charge Description Place of Offense: 135 - STAMFORD
     Charge Description Date of Offense: 08/22/2008
          Statute  PROBATION VIOL (53a-32)
          Counts   1
```

```
                    Severity  Not Classified
                 Disposition  ( 2009-07-28; Guilty)

                Sentence  1 YEAR(S) JAIL,  1 YEAR(S) SUSP,  3 YEAR(S) PROB,
                          Consecutive
================================= Arrest Cycle 004  ==============================
Arrest Caveat             MISDEMEANOR CONVICTION


---------------------- Judicial Arrest ------------------------------------------
Arrest Date               2005-11-18
Arrest Case Number        11180116
Arresting Agency          CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)           REESE, GISELE
UAR Number: 09061503
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------- Judicial Arrest ------------------------------------------
Arrest Date               2007-05-11
Arrest Case Number        11180116
Subject Name(s)           REESE, GISELE
UAR Number: 01855076
Arresting Agency Name: PROBATION DEPARTMENT
Place of Arrest: 135 - STAMFORD
---------------------- Judicial Arrest ------------------------------------------
Arrest Date               2007-12-20
Arrest Case Number        0712200133
Arresting Agency          CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)           REESE, GISELE
UAR Number: 09068042
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------- Judicial Arrest ------------------------------------------
Arrest Date               2008-12-11
Arrest Case Number        05-11180116
Arresting Agency          CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)           REESE, GISELE
UAR Number: 08637834
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------- Judicial Arrest ------------------------------------------
Arrest Date               2010-08-20
Arrest Case Number        1008200042
Arresting Agency          CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)           REESE, GISELE
UAR Number: 06823745
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------------------------------------------------------------
Court Case Number         S01S-CR05-0153991-S
Subject Name(s)           REESE, GISELE

Date of Rearrest: 12/20/2007
Court Location: S01S - Stamford G.A. 1
Fingerprint Supported: Yes
Bond Type: Professional Surety
Bond Amount: $10,000.00
Sentence Modification Disposition Date: 01/06/2011
Charge                    002

        Charge Description Place of Offense: 135 - STAMFORD
        Charge Description Date of Offense: 05/11/2007
                Statute   PROBATION VIOL (53a-32)
                Counts    1
                Severity  Not Classified
             Disposition  ( 2008-04-02; Guilty)


---------------------------------------------------------------------------
```

```
Sentencing                    (Arrest Cycle 004)
        Charge Description Place of Offense: 135 - STAMFORD
        Charge Description Date of Offense: 11/18/2005
                    Statute  RCKLES ENDNGR 2 (53a-64)
                    Counts   1
                    Severity Misdemeanor
         Inchoate Charg  Attempt
              Disposition  ( 2006-05-11; Guilty)

                    Sentence  6 MONTH(S) JAIL,  6 MONTH(S) SUSP,  1 YEAR(S)
                              PROB
------------------------------------------------------------------------
Sentencing                    (Arrest Cycle 004)
        Charge Description Place of Offense: 135 - STAMFORD
        Charge Description Date of Offense: 12/13/2007
                    Statute  FLR TO APPEAR 2 (53a-173)
                    Counts   1
                    Severity Misdemeanor
              Disposition  ( 2008-04-02; Guilty)

                    Sentence  1 YEAR(S) JAIL,  1 YEAR(S) SUSP,  3 YEAR(S) PROB,
                              Concurrent
------------------------------------------------------------------------
Sentencing                    (Arrest Cycle 004)
        Charge Description Place of Offense: 135 - STAMFORD
        Charge Description Date of Offense: 08/22/2008
                    Statute  PROBATION VIOL (53a-32)
                    Counts   1
                    Severity Not Classified
              Disposition  ( 2009-07-28; Guilty)

                    Sentence  1 YEAR(S) JAIL,  1 YEAR(S) SUSP,  3 YEAR(S) PROB,
                              Concurrent
------------------------------------------------------------------------
Sentencing                    (Arrest Cycle 004)
        Charge Description Place of Offense: 135 - STAMFORD
        Charge Description Date of Offense: 08/04/2010
                    Statute  PROBATION VIOL (53a-32)
                    Counts   1
                    Severity Not Classified
              Disposition  ( 2011-01-06; Guilty)

                    Sentence  6 MONTH(S) JAIL,  Concurrent
================================ Arrest Cycle 003  ================================
Arrest Caveat            MISDEMEANOR CONVICTION

----------------------- Judicial Arrest -----------------------------------
Arrest Date              2000-08-05
Arrest Case Number       00805027
Arresting Agency         CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)          REESE, GISELE
UAR Number: 09041147
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
----------------------- Judicial Arrest -----------------------------------
Arrest Date              2000-10-16
Arresting Agency         CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)          REESE, GISELE
UAR Number: 09042253
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
------------------------------------------------------------------------
Court Case Number        S01S-CR00-0133655-S
Subject Name(s)          REESE, GISELE

Date of Rearrest: 10/16/2000
Court Location: S01S - Stamford G.A. 1
Fingerprint Supported: Yes
Bond Type: Professional Surety
```

```
Bond Amount: $5,000.00
--------------------------------------------------------------------------
Sentencing                   (Arrest Cycle 003)
       Charge Description Place of Offense: 135 - STAMFORD
       Charge Description Date of Offense: 08/05/2000
               Statute   BREACH OF PEACE (53a-181)
               Counts    1
               Severity  Misdemeanor
           Disposition   ( 2001-03-20; Guilty)

           Sentence   6 MONTH(S) JAIL,   6 MONTH(S) SUSP,   18 MONTH(S)
                      PROB,  Concurrent
--------------------------------------------------------------------------
Sentencing                   (Arrest Cycle 003)
       Charge Description Place of Offense: 135 - STAMFORD
       Charge Description Date of Offense: 08/05/2000
               Statute   INTRFERE/RESIST (53a-167a)
               Counts    1
               Severity  Misdemeanor
           Disposition   ( 2001-03-20; Guilty)

           Sentence   6 MONTH(S) JAIL,   6 MONTH(S) SUSP,   18 MONTH(S)
                      PROB,  Concurrent
============================== Arrest Cycle 002 ===========================
Arrest Caveat            MISDEMEANOR CONVICTION

---------------------- Judicial Arrest -----------------------------------
Arrest Date              1998-10-16
Arrest Case Number       9884856
Arresting Agency         CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)          REESE, GISELLE
UAR Number: 09032382
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
---------------------- Judicial Arrest -----------------------------------
Arrest Date              1999-02-25
Arrest Case Number       P9884856
Arresting Agency         CT0013500  P.D. STAMFORD 911 CENTER

Subject Name(s)          REESE, GISELLE
UAR Number: 09034168
Arresting Agency Name: LOCAL POLICE STAMFORD
Place of Arrest: 135 - STAMFORD
--------------------------------------------------------------------------
Court Case Number        S01S-CR98-0125583-S
Subject Name(s)          REESE, GISELLE

Court Location: S01S - Stamford G.A. 1
Fingerprint Supported: Yes
Bond Type: Professional Surety
Bond Amount: $2,500.00
--------------------------------------------------------------------------
Sentencing                   (Arrest Cycle 002)
       Charge Description Place of Offense: 135 - STAMFORD
       Charge Description Date of Offense: 10/16/1998
               Statute   BRCH OF PEACE 2 (53a-181)
               Counts    1
               Severity  Misdemeanor
           Disposition   ( 1999-02-25; Guilty)

           Sentence $75.00 FINE
--------------------------------------------------------------------------
Sentencing                   (Arrest Cycle 002)
       Charge Description Place of Offense: 135 - STAMFORD
       Charge Description Date of Offense: 10/16/1998
               Statute   INTRFERE/RESIST (53a-167a)
               Counts    1
               Severity  Misdemeanor
           Disposition   ( 1999-02-25; Guilty)
```

```
                 Sentence  $75.00 FINE
============================== Arrest Cycle 001 ==============================
Arrest Caveat            MISDEMEANOR CONVICTION


---------------------- Judicial Arrest ----------------------------------
Arrest Date              1995-04-13
Arrest Case Number       95-15226
Arresting Agency         CT0010300  P.D. NORWALK COMMUNICATIONS

Subject Name(s)          REESE, GISELE
Arresting Agency Name: LOCAL POLICE NORWALK
Place of Arrest: 103 - NORWALK
------------------------------------------------------------------------
Court Case Number        S20N-CR95-0069135-S
Subject Name(s)          REESE, GISELE

Court Location: S20N - Norwalk G.A. 20
Bond Type: Promise to Appear
------------------------------------------------------------------------
Sentencing            (Arrest Cycle 001)
      Charge Description Place of Offense: 103 - NORWALK
      Charge Description Date of Offense: 04/13/1995
              Statute   LARCENY 6 (53a-125b)
               Counts   1
             Severity   Misdemeanor
          Disposition   ( 1995-05-08; Guilty)

             Sentence   $125.00 FINE
**************************  INDEX OF AGENCIES  **************************

Agency                   P.D. NORWALK COMMUNICATIONS; CT0010300

------------------------------------------------------------------------

Agency                   P.D. STAMFORD 911 CENTER; CT0013500

------------------------------------------------------------------------
```

# EXHIBIT D

Charge Sheet – Weapon in a Motor Vehicle (C.G.S. §29-38).

Attached hereto.

```
        Statute   WPN IN MTR VEH (29-38)
         Counts   1
       Severity   Felony
    Disposition   ( 2009-07-28; Guilty)

       Sentence   3 YEAR(S) JAIL,   4 MONTH(S) SUSP,   3 YEAR(S) PROB
```

# EXHIBIT E

Police Report Showing Actual Charge (No Gun Offense).

Attached hereto.

STAMFORD POLICE DEPARTMENT
# INCIDENT REPORT

| INCIDENT# | 0 | 8 | 0 | 8 | 2 | 2 | 0 | 0 | 4 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| | YEAR | | MO | | DAY | | | | | |

CHECK IF
☐ SUPPLEMENTARY REPORT
☐ FINGERPRINTS

| ON. REPORTED | TYPE OF INCIDENT | | | | INCIDENT CODE | INVESTIGATING OFFICER | | EMPLOYEE NUMBER |
|---|---|---|---|---|---|---|---|---|
| 1045HRS | DISORDERLY CONDUCT | | | | 90C | PHILLIPS/EDSON | | 22323/22320 |
| DATE REPORT SUBMITTED | LOCATION | AT NO | STREET, ROAD | | | | | |
| 08/22/2008 | 50 | | ROOSEVELT AVE | | | | | |

**PERSONS**

| STATUS | LAST NAME | FIRST NAME | M | SEX | RACE | MO | DAY | YR | TELEPHONE | ADDRESS | OPER LIC. OR S.S.# |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C | JOYNER | MICHAEL | L | M | B | 07 | 20 | 74 | 203-424-9568 | 109 CONNECTICUT AVE STAMFORD CT | |

**ARRESTS**

| | LAST NAME | FIRST NAME | | SEX | RACE | MO | DAY | YR | TELEPHONE | ADDRESS | OPER LIC. OR S.S.# |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | REESE | GISELE | | F | B | 06 | 01 | 74 | 203-286-8154 | 261 ELY AVE 16 1D, NORWALK CT | 185060893 |

ARREST 1
| CHARGE 1 | STATUTE | CLASS | CHARGE 2 | STATUTE | CLASS | CHARGE 3 | STATUTE | CLASS |
|---|---|---|---|---|---|---|---|---|
| BREACH OF PEACE 2ND | 53A-181 | M | HARASSMENT 2ND | 53A-183 | M | WEAPON IN MV | 29-38 | F |

ARREST 2
| CHARGE 1 | STATUTE | CLASS | CHARGE 2 | STATUTE | CLASS | CHARGE 3 | STATUTE | CLASS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**PROPERTY**

| STATUS CODE | CODE | QTY | YEAR | ITEM | BRAND/MODEL | VEHICLE REGISTRATION | STATE | COLOR | CHARACTERISTICS/CONDITIONS - SERIAL OR VIN | EST. VALUE | PRESENT LOCATION OF PROPERTY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | E | 1 | | FIXED HANDLE KNIFE | | | | BLACK/SILVER | APPROX. 8.5" BLADE | | SPD PROP |
| | V/T | 1 | 2000 BUICK LESABRE | | | 136 WVM | CT | WHITE | 1G4HP54K1YU120204 | | BILLS SERVICE |

INCIDENT DETAILS
Friday, August 22, 2008                     Approx. 1045hrs

On the above date and approx. time Officer Edson and I were assigned to beat 1B in radio car 38. Officers were dispatched code 3 (lights and sirens) to 50 Roosevelt Ave. on report of an ex-girlfriend who had a crow-bar and was about to damage the complainants vehicle. Dispatch informed Officers that the female may possibly be in Buick 4Door color white. Upon arrival Officers found the complainant, Michael Joyner, standing in the road and a female sitting in a Buick 4Door color white parked in the middle of the street, later identified as Gisele Reese.

I spoke with Joyner while Officer Edson spoke with Reese. Joyner informed me that he parked his vehicle on Roosevelt Ave. last evening and spent the night at his sisters residence of 29 Roosevelt Ave. Reese stated that he received an excessive amount of phone calls from Reese this morning as he was trying to get ready for work. Joyner stated Reese told him she was going to smash up and damage his vehicle. Joyner told me that he and Reese dated and broke up about a year ago and that she may be upset about a picture that someone sent to her of him and another woman.

Joyner stated he began to walk down Roosevelt Ave and noticed the white Buick, which he knows that Reese drives, parked next to his vehicle, with her standing next to it. Joyner kept walking towards his vehicle and could hear her yelling loudly at him about being with other woman and other re-

| INVESTIGATING OFFICER SIGNATURE | EMPLOYEE NUMBER | REQUEST COPY BE SENT TO: | FOLLOW-UP ACTIONS BY | |
|---|---|---|---|---|
| | 22323/22320 | | ☐ INVESTIGATOR | ☐ UNIFORM |
| REVIEWED BY | SHIFT COMMANDER | | ☐ JUVENILE OFFICER | ☐ NONE |
| | | | | PAGE 1 OF 2 |

☐ CHECK IF
☐ SUPPLEMENTAL REPORT
☐ FINGERPRINTS

**STAMFORD POLICE DEPARTMENT**
**INCIDENT REPORT NARRATIVE SUPPLEMENT**

| | | INCIDENT # | 0 | 8 | 0 | 8 | 2 | 2 | 0 | 0 | 4 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | YEAR | | MO | | DAY | | | | | |

| 104533 | TYPE OF INCIDENT | | INCIDENT CODE | INVESTIGATING OFFICER | EMPLOYEE NUMBER |
|---|---|---|---|---|---|
| | **DISORDERLY CONDUCT** | | 90C | PHILLIPS/EDSON | 22323/22320 |
| DATE REPORT SUBMITTED 08/22/2008 | LOCATION OF INCIDENT 50 | BY NO | STREET NAME ROOSEVELT AVE | | APT NO LOCATION |

lationship issues. Joyner stated he then called the police after she kept yelling before the neighbors got alarmed and called.

Officer Edson asked Reese to step out of her vehicle so we could speak with her which she did without incident, and placed her in hand cuffs. Reese stated she was upset about the photograph that was sent to her phone and came down to Stamford this morning to speak with Joyner about it. Reese stated she did not damage Joyner's car. Joyner confirmed there was no damage to his vehicle.

Officers completed a vehicle inventory of Reese's car prior to having it towed and located a fixed blade knife with a black handle underneath the driver seat. The blade of the knife measured approx. 8.5". Officer Edson took possession of the knife and secured it in the trunk of radio car 38. No crow bar was located. Joyner stated he believed she had something like a crow bar in her hand when he first saw her but may have been wrong because he was approx 60 yards away. The knife was placed into SPD property. Evidence sheets completed.

Details of Arrest:

NAME:     Reese, Gisele
DOB:      6/1/1974
ADDRESS:  261 Ely Ave 16 1D Norwalk CT 06854
CHARGES:  BOP 53a-181
          Harassment 2nd 53a-183
          Weapon in MV 29-38
BOND:     $1,000.00 per Sgt. Loughran

| | EMPLOYEE NUMBER 22323/22320 | ROUTE COPY BE SENT TO | | FOLLOW-UP ACTIONS BY | | PAGE 2 OF 2 |
|---|---|---|---|---|---|---|
| | | | | ☐ INVESTIGATOR     ☐ UNIFORM | | |
| | | | | ☐ JUVENILE OFFICER   ☐ NONE | | |

# EXHIBIT F

Paul Testa EEOC Position Statement (May 24, 2023).

Attached hereto.



BERCHEM
MOSES PC

PAUL A. TESTA
ptesta@berchemmoses.com

PLEASE REPLY TO
MILFORD OFFICE
WWW.BERCHEMMOSES.COM

May 24, 2023

Marc Hawley
U.S. EEOC
Boston Area Office
15 New Dudbury Street, Room 475
Boston, MA 02203

> **Re:  Gisele Reese v. Milford Health & Rehabilitation Center**
> **EEOC No. 523-2023-02037**

Dear Mr. Hawley:

    This firm represents Respondent Milford Health & Rehabilitation Center ("Milford Health" or the "Respondent"), in connection with Gisele Reese's ("Reese" or "Complainant") Charge of Discrimination, referenced above (the "Complaint"). This letter shall serve as Milford Health's position statement in response to the Complaint.[1]

## I.    SUMMARY OF POSITION

    Complainant claims that Respondent discriminated against her based on her race (African American) and/or color (Black), when it failed to hire her because of her criminal record. Complainant essentially asserts that because she applied for the position and had a criminal

---

[1] This position statement is submitted to assist the EEOC in investigating the above-referenced Complaint so that the Complaint may be resolved as expeditiously as possible. This position statement and accompanying documents are confidential and should not be disclosed to individuals or entities outside the EEOC without Milford Health's prior written consent, except as required to Complainant or Complainant's legal representative, or in response to a valid Freedom of Information Act request. Inclusion of information in this position statement does not constitute a waiver of any objection or privilege Milford Health may have in response to future discovery or information requests, or to the introduction of evidence in this or any subsequent proceeding; nor does it constitute a waiver of any objection as to timeliness of the Complaint or any other legal argument Milford Health may assert in the future. Furthermore, this position statement, although believed to be true and correct in all respects, does not constitute an affidavit or admission, and is not intended to be used as evidence in any court or other proceedings. Milford Health retains its right to present new, revised, or additional facts or arguments or to respond to any new issues or evidence that may arise.

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 2

background, the failure to hire her must be discrimination based on her race (African American) and/or color (Black) on a disparate impact theory. Her claims are baseless.

To the contrary, Respondent does not have a policy or practice against hiring individuals with criminal backgrounds[2] and Respondent has a diverse workforce including many African American employees who, according to the disparate impact theory articulated in the Complaint, would be adversely affected by such a policy. In fact, of Respondent's 181 employees, **83** identify as Black or African American, 56 identify as White, 25 identify as Hispanic or Latino, 12 identify as Asian, and 5 identify as Two or More Races. Further, Milford Health currently employs an individual who also disclosed a criminal background on his application. Moreover, at the time of Reese's Certified Nursing Assistant ("CNA") Application, Milford Health hired a total of 7 CNA's, of which **6 identified as Black or African American** and 1 identified as Two or More races. Cleary, Milford Health did not discriminate against her on the basis of her race, color, or any other alleged protected category.

For these reasons (discussed more fully below), Milford Health respectfully requests that Complainant's charge be dismissed in its entirety

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Respondent's Criminal History Record Check Policy

In accordance with Conn. Gen. Stat. § 19a-491c, Milford Health has in place a criminal history record check policy. See Criminal History Record Check Policy, Exhibit A. The policy states in part:

**Procedure:**

1) After an offer of employment has been made to prospective employee, he or she will be given an information letter (Form A). After reading the letter, they will sign the acknowledgement of receipt and the facility will make a copy of the signed document. The original will be placed in the personnel file. The employee will be furnished with the copy.

2) The prospective Employee will read, sign and complete the Criminal History and Background Search Consent and Disclosure Form (Form B). A copy will be maintained in the personnel file and the employee will be given a copy. The employee will also be given a copy of the State Criminal History and Patient Abuse Background Search Program Regulations. (Form C)

---

[2] However, Respondent is prohibited by Connecticut law from hiring individuals who have been convicted of certain offenses. See Conn. Gen. Stat. § 19a-491c.

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 3

3) The facility's Human Resource designee will provide the employee with a Fingerprinting Authorization Form generated by ABCMS (Form D) to be completed and taken to an authorized fingerprinting location along with a list (Form E) of approved fingerprint scanning locations.

## Provisional Employment

The facility may employ applicants on a provisional basis for sixty calendar days while awaiting the results of the Criminal History Record Check (CHRC) as long as the following conditions are met:

- The employee has initiated the fingerprinting process
- The facility has no knowledge or reason to believe that the applicant is unsuitable for employment
- The applicant has submitted a statement disclosing any finding of Resident abuse or criminal conviction other than a traffic violation
- The facility provides direct supervision of the applicant while the applicant is in the facility.
- A record of supervision must be documented in the provisional employee's personnel file

The Facility's Human Resource representative will provide the provisional employee with a "Provisional Employee Supervision Log" (Form F) which will be filled out daily by the employee's supervisor until the results of the CHRC are available and a final hiring decision is made. This log should be maintained in the employee's personnel file.

## Disqualifying CHRC Results

The facility is prohibited by State law from hiring individuals who have been convicted of certain offenses. The DESPP shall report the results of the state and national criminal history records check electronically through the ABCMS. The Department shall review such criminal history record for the existence of a disqualifying offense and update the ABCMS accordingly. The Department shall provide automated notice to the facility of the results of the disqualification or clearance determination pursuant to the provisions of the state statute.

If the criminal history record check reveals a disqualifying offense, the Department shall notify the individual of the disqualification in writing and provide the individual with an opportunity to seek a waiver of the disqualifying offense.

**If the results of the CHRC includes a criminal record, but does not include a disqualifying offense, the results must be reviewed by the NHCA human resource representative to determine whether or not the individual is eligible for employment according to facility organizational guidelines.**

Id. (emphasis added).

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 4

**B.     Complainant's Application and Provisional Offer of Hire**

In or around August 2022, Complainant applied for a CNA position with Milford Health. See Affidavit of Jocelyn Dirgo ("Dirgo Aff.") (Exhibit B) at ¶ 3. On August 12, 2022, Complainant was interviewed for a CNA position by Karin Watts, Nursing Scheduler. Director of Human Resources Jocelyn Dirgo, who would generally conduct the employment interview, was out of the office. After the interview, Ms. Watts offered Complainant the position. Id. at ¶ 4.

On August 15, 2022, Complainant was emailed an offer letter. Id. at ¶ 5; see also Offer Letter, Exhibit C. The Offer Letter stated that the offer was "contingent upon . . .The successful completion of a background check." Offer Letter. That same day, Ms. Dirgo contacted Complainant to review the employment offer sent and pre-hire requirements, such as the criminal background check. Dirgo Aff. at ¶ 6. As Complainant was already in the CT DPH Applicant Background Check Management System ("ABCMS") registry with a fingerprint authorization form generated by another unknown company, Ms. Dirgo submitted Complainant's criminal background check to ABCMS. Id. at ¶ 7. At no time during this conversation did Complainant discuss or try to explain her criminal background to Ms. Dirgo. Id. at ¶ 6.

**C.     Complainant's Background Check Report Showed Multiple Serious Convictions[3]**

When Respondent received Complainant's background check report from the Connecticut Department of Emergency Services and Public Protection, it revealed that Complainant had multiple serious criminal convictions on record with the State Police Bureau of Identification. Id. at ¶ 8.

The report showed that on May 8, 1995, Complainant was convicted of larceny in the sixth degree in violation of Conn. Gen. Stat. § 53a-125b, which is a class C misdemeanor.

On February 25, 1999, Complainant was convicted of interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a, which is a class A misdemeanor. Complainant was also convicted of breach of the peace in the second degree in violation of Conn. Gen. Stat.§ 53a-181, which is a class B misdemeanor.

On March 20, 2001, Complainant was again convicted of interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a and breach of the peace in the second degree in violation of Conn. Gen. Stat.§ 53a-181. Based on these convictions, Complainant was sentenced to six months in jail and other conditions.

---

[3] Respondent has chosen not to attach Complainant's background check report as it contains sensitive information of Complainant. However, if the EEOC requests a copy of the report, Respondent will provide it promptly.

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 5

On May 11, 2006, Complainant was convicted of reckless endangerment in the second degree in violation of Conn. Gen. Stat. § 53a-64. Based on this conviction, Complainant was sentenced to six months in jail and other conditions.

On March 19, 2008, Complainant was convicted of threatening in the second degree in violation of Conn. Gen. Stat. § 53a-62. Based on this conviction, Complainant was sentenced to one year in jail and other conditions.

On April 2, 2008, Complainant was convicted of failure to appear in the second degree in violation of Conn. Gen. Stat. § 53a-173 and interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a. Based on these convictions, Complainant was sentenced to one year in jail and other conditions.

On April 1, 2009, Complainant was convicted of a probation violation in violation of Conn. Gen. Stat.§ 53a-32 and threatening in the second degree in violation of Conn. Gen. Stat. § 53a-62. Based on this conviction, Complainant was sentenced four months in jail.

On July 28, 2009, Complainant was convicted of harassment in the second degree in violation of Conn. Gen. Stat. § 53a-183. Based on this conviction, Complainant was sentenced to three months in jail.

On July 28, 2009, Complainant was convicted of a probation violation in violation of Conn. Gen. Stat.§ 53a-32. Based on this conviction, Complainant was sentenced to one year in jail and other conditions.

On July 28, 2009, Complainant was also convicted of a felony for having an unregistered weapon in her vehicle in violation of Conn. Gen. Stat. § 29-38. Based on this conviction, Complainant was sentenced to three years in jail and other conditions.

On January 6, 2011, Complainant was convicted of a probation violation in violation of Conn. Gen. Stat. § 53a-32. Based on this conviction, Complainant was sentenced to eighteen months in jail and other conditions.

On January 10, 2011, Complainant was convicted of interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a and inciting to riot in violation of Conn. Gen. Stat.§ 53a-178. Based on these convictions, Complainant was sentenced to nine months in jail.[4]

---

[4] Some of the jail sentences discussed above were concurrent.

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 6

### D.    Rescission of Complainant's Provisional Offer of Hire

On August 17, 2022, Ms. Dirgo received Complainant's criminal background check results. Dirgo Aff. at ¶ 8. While the results did not include an automatic disqualifying offense under Connecticut law, it did show multiple serious convictions resulting in jail time. Id. In accordance with Respondent's Criminal History Record Check Policy, Ms. Dirgo reviewed the multiple convictions and determined that Complainant would not be a good fit for the Company. Id. at ¶ 9. In making this determination, Ms. Dirgo considered the nature of Complainant's convictions which included a gun related offense, reckless endangerment, threatening, larceny, inciting a riot and harassment, and contrasted them with the clientele that Complainant would be working with. Milford Health's clientele are elderly, vulnerable people, whom Complainant would be working with on a daily basis. Id. A lot of the time she would be working alone with these patients. Id. The safety of Milford Health's clientele is its number one priority. Id. Based on all of these considerations, Ms. Dirgo made the determination that Complainant would not be a good fit for the Company. Id. On said date, Ms. Dirgo informed Complainant that she did not successfully pass the background screening and that because of this she was rescinding the provisional offer of employment. Id. at ¶ 10.

Moreover, besides an automatic disqualifier required by Connecticut law, a conviction is not an automatic bar to employment with Milford Health. Milford Health reviews each applicant on a case-by-case basis. Id. at ¶ 11. Indeed, Milford Health currently employs a housekeeper who disclosed a criminal background on his application (over 15 years prior to his hire) that included a breach of peace, operation of a motor vehicle under the influence, and criminal mischief in the second degree. Id. at ¶ 12. This individual disclosed his criminal record to Respondent after the offer letter and during the background check process. Id. Based on this discussion, the offenses committed, and the position (housekeeper), Ms. Dirgo decided that the nature of his criminal background and convictions were not a bar to employment, and hired him. Id.

### III.    LEGAL ARGUMENT

As discussed above, Milford Health did not discriminate against Complainant based on her race or color. Indeed, having criminal convictions is not itself a protected status under the law. See Exum v. NYC Health & Hosps., Corp., No. 15 CIV. 3367 BMC, 2015 WL 5695538, at *2 (E.D.N.Y. Sept. 28, 2015) ("To the extent that plaintiff seeks to assert a claim based on a theory of discrimination tied to his criminal record, his complaint fails to state a claim upon which relief may be granted. **Individuals with an arrest or conviction record are not a protected class under Title VII, and any discrimination plaintiff feels he suffered on that basis is not actionable under Title VII.**") (emphasis added) (internal quotations omitted); Stevens v. Siemens Mobility, No. 218CV01065TLNACPS, 2018 WL 3348730, at *2 (E.D. Cal. July 9, 2018) ("in

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 7

general, **employers are free to refuse to hire applicants with any criminal record without violating Title VII or the ADEA, even if plaintiff personally disagrees with the relevance of such a requirement for the position he seeks**.") (emphasis added) (internal quotations and citation omitted).

To the extent Complainant is alleging that she was discriminated against based on a disparate impact theory, i.e., that Milford Health's criminal-conviction policy has a disparate impact on minorities, that claim also fails.

By Title VII's terms, "An unlawful employment practice based on disparate impact is established . . . if a complaining party demonstrates that an employer uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. . . ." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Crucially, there must be an identifiable "particular employment practice" causing the disparate impact. "The first step in disparate impact analysis is to identify the particular policy or practice that causes the unlawful disparate impact." EEOC, Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act (Apr. 25, 2012), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-consideration-arrest-and-conviction-records-employment-decisions.

Complainant has not alleged any particular employment practice that results in a disparate impact on minorities. Indeed, without any support, she simply states "I believe that Respondent not hiring me because of my criminal record discriminated against me because of my race since Blacks and other minorities are more likely to have criminal conviction records than non-minorities." Complaint. However, this conclusory allegation is insufficient to establish a particular policy or practice that causes an unlawful disparate impact. See Exum, 2015 WL 5695538, at *2 ("plaintiff's allegation of disparate impact based on race is wholly conclusory. He fails to allege any facts to identify a facially neutral policy, or to show that the policy disproportionately had an adverse effect on a protected class of individuals.") (internal quotations omitted);

Moreover, the evidence actual shows that besides an automatic disqualifier required by Connecticut law, a criminal conviction is not an automatic bar to employment with Milford Health. Indeed, Milford Health currently employs a housekeeper who disclosed a criminal background on his application (over 15 years prior to his hire) that included a breach of peace, operation of a motor vehicle under the influence, and criminal mischief in the second degree. This undermines Complainant's conclusory allegations. See Rogers v. Pearland Indep. Sch. Dist., 827 F.3d 403, 407 (5th Cir. 2016) ("the record reflects that a felony conviction, while adverse to an application, is not an automatic bar to employment . . . The record also shows that the School District recently hired several employees who had felony and misdemeanor convictions. Rogers does not offer any evidence that the School District enforced a policy to exclude from employment all persons who had been convicted of a felony.") (internal quotations omitted).

{01742058.DOCX Ver. 1}

Marc Hawley
U.S. Equal Employment Opportunity Commission
May 24, 2023
Page 8

Further, Milford Health has a diverse workforce including many African American employees who, according to the disparate impact theory articulated in the Complaint, would be adversely affected by such a policy. Dirgo Aff. at ¶ 14. In fact, of Respondent's 181 employees, **83** identify as Black or African American, 56 identify as White, 25 identify as Hispanic or Latino, 12 identify as Asian, and 5 identify as Two or More Races. Id. Black or African American employees make up the majority of Milford Health's workforce. Id.

Additionally, at the time of Reese's CNA Application, Milford Health hired a total of 7 CNA's, of which **6 identified as Black or African American** and 1 identified as Two or More races. Id. at ¶ 13. Cleary, there was no disparate impact on Black or African American applicants as all the applicants hired instead of Complainant were minorities and 6 out of the 7 CNA positions were filled by Black or African American applicants.

Accordingly, the evidence is clear that Milford Health did not discriminate against Complainant on the basis of her race, color, or any other alleged protected category.

## IV.    CONCLUSION

As demonstrated above, Complainant's Complaint is without merit. Accordingly, Milford Health respectfully requests that her claim be dismissed in its entirety.

In this response, Milford Health has sought to comprehensively address the allegations contained in Complainant's Complaint. However, to the extent that the Milford Health's response does not specifically respond to any particular allegation in the Complaint, Milford Health hereby expressly *denies* such allegation.

Please contact me if you have any questions, or if Complainant raises any new allegations or presents additional evidence to which Milford Health has not had the opportunity to respond.

Sincerely,

Paul A. Testa, Esq.

Attachments

{01742058.DOCX Ver. 1}

# EXHIBIT G

Plaintiff's Rebuttal Statement to EEOC.

Attached hereto.

Dear Mr. Hawley,

I am writing to provide further information and clarification in response to Mr. Paul Testa's position statement and on behalf of Milford Health and Rehabilitation Center (MHRC), specifically regarding the rescinding of my employment offer due to a criminal background check. I would like to address the issues raised and shed light on relevant laws and protections that apply to this situation.

Firstly, I want to emphasize that I possess a Provisional Pardon a Certificate of Employability from the State of Connecticut Board of Pardons and Parole, which verifies that there are no restrictions or limitations associated with my criminal background. This information is verifiable through the portal.**ct.gov** site, which confirms my eligibility for employment without any hindrances due to my past 22 years of experience with a license and certification in Certified Nursing Aide and an additional 9 years of experience without a license or certification due to my love, compassion, and passion of helping others.  Please also note that in the now over 31 years of my work experience, I have never received any employer and/or patient complaints. I would also like to state that Milford Health & Rehabilitation Center currently uses employment agencies. One of the employment agencies I'm currently employed with SambaCare I receive constant emails for open shifts for Milford Health & Rehabilitation Center, unable to be directly employed through Milford Health & Rehabilitation Center however I'm able to go through an employment agency.

After further review of the Respondent's position statement please see the following rebuttal statements as per Mr. Testa's page sequence.

Page 2 under "Procedure" where states under Section 2) that "The prospective Employee will read, sign and complete the Criminal History and Background Search Consent and Disclosure Form (Form B). A copy will be maintained in the personnel file and the employee will be given a copy. The employee will also be given a copy of the State Criminal History and Patient Abuse Background Search Program Regulations. (Form C)

**ANSWER: I have not received although requested it on September 10, 2022.  At the same request, I also requested a letter for not hiring.**

Page 2 reference to the footer note labeled as 2 states "However, Respondent is prohibited by Connecticut law from hiring individuals who have been convicted of certain offenses. See Conn. Gen. Stat. § 19a-491c."

**ANSWER: Untrue statements by Ms. Dirgo. I have never been asked nor was I allowed to elaborate or provide additional information concerning my charges, I was belatedly told via phone that I couldn't be hired because of what just came back on my criminal record overlooking the time lapsed since my offense or sentence from May 8, 1995 to January 10, 2011. However, serious or not. I also do not have multiple serious criminal convictions. I have numerous misdemeanor charges that I can only attribute to poor judgment on my part and One serious criminal conviction (please see Page 6, paragraph 1, line 6 midway where it states that "Ms. Dirgo considered the nature of Complainant's convictions which included a gun-related offense," (see insert below from Respondent's position statement) that my convictions included a gun-related offense (CT General Statutes 29-35 - Carrying of pistol or revolver without permit prohibited) of which is completely false and presumed to be accurate by Ms. Dirgo. I was charged and convicted of CT General Statutes 29-38 - possession of weapons in a vehicle is a Class D felony punishable by up to 5 years in jail and a fine of up to $5,000. Additionally, I was never allowed to elaborate or offer any additional information as to any of the past convictions that might have impacted and/or influence the decision to hire me.**

Page 6, Under ''Legal Argument''

**Individuals with an arrest or conviction record are not a protected class under Title VII, and any discrimination plaintiff feels he suffered on that basis is not actionable under Title VII.**

**employers are free to refuse to hire applicants with any criminal record without violating Title VII or the ADEA, even if plaintiff personally disagrees with the relevance of such a requirement for the position he seeks.**

**Overview of Anti-Discrimination Laws**

**The EEOC enforces federal laws that prohibit discrimination — including based on race and national origin — in private, state and local government, and federal sector workplaces.**

Employers can consider criminal records when they make the final decision about hiring. But employers cannot treat people differently because of their race or national origin. For example, an employer cannot refuse to hire qualified Black men with felony convictions but hire equally-qualified or less-qualified White men with similar felony convictions.

Also, an employment policy that rejects many more applicants of one race, national origin, or sex is discriminatory if the policy is not closely related to the job. An employer that rejects everyone with a conviction from all employment opportunities is likely engaging in discrimination.

An Employer That Considers Criminal Records in Hiring Decisions Should Assess Whether the Record is Relevant to the Job. An employer can assess the relevance of a person's criminal history and how it relates to the risks and responsibilities of the job. To do so, the employer should consider:

the nature and seriousness of the offense/crime;

the time that has passed since the criminal offense or completion of the sentence; and

the nature of the job.

The employer's hiring decision should accurately predict who will be a responsible, reliable, and safe employee. Note that some laws prohibit employers from hiring people with certain criminal records for

some jobs. For example, federal law prohibits anyone convicted of certain serious crimes in the last 10 years from working as a security screener or having unescorted access to secure areas of an airport.

**https://www.eeoc.gov/laws/guidance/enforcement-guidance-consideration-arrest-and-conviction-records-employment-decisions.**

Page 3 under "Disqualifying CHRC Results" where states that "The facility is prohibited by State law from hiring individuals who have been convicted of certain offenses. The DESPP shall report the results of the state and national criminal history records check electronically through the ABCMS. The Department shall review such criminal history records for the existence of a disqualifying offense and update the ABCMS accordingly. The Department shall provide automated notice to the facility of the results of the disqualification or clearance determination under the provisions of the state statute.

If the criminal history record check reveals a disqualifying offense, the Department shall notify the individual of the disqualification in writing and provide the individual with an opportunity to seek a waiver of the disqualifying offense.

If the results of the CHRC include a criminal record but do not include a disqualifying offense, the results must be reviewed by the NHCA human resource representative to determine whether or not the individual is eligible for employment according to facility organizational guidelines. "

**ANSWER: The results of the CHRC includes a criminal record, but do not include a disqualifying offense.  However, the results must be reviewed by the NHCA human resource representative to determine whether or not I am eligible for employment according to facility organizational guidelines.**

Page 4 under "B. Complainant's Application and Provisional Offer of Hire, paragraph 2 under "paragraph 7." states "At no time during this conversation did Complainant discuss or try to explain her criminal background to Ms. Dirgo."

**ANSWER: I have been rehabilitated. I hold a provisional pardon, a certificate of employability, through the Board Of Pardon & Parole holding no restrictions and or disqualifying offenses to be denied employment.**

Page 4 under "C. Complainant's Background Check Report Showed Multiple Serious Convictions", 1st paragraph.

**ANSWER: Untrue statements by Ms. Dirgo.  I have never been asked nor was I given the opportunity to elaborate or provide additional information with respect to my charges, I was belatedly told via phone that I couldn't be hired because of what just came back on my criminal history overlooking the**

that I couldn't be hired because of what just came back on my criminal history overlooking the time lapsed since my offense or sentence from May 8, 1995 to January 10, 2011. However serious or not. I also do not have multiple serious criminal convictions. I have multiple misdemeanor charges that I can only attribute to poor judgment on my part and One serious criminal conviction (please see Page 6, section (D), paragraph 9 where Ms. Dirgo "considered the nature of my convictions which included a gun-related offense," (see insert below from Respondent's position statement) that my convictions included a gun-related offense (CT General Statutes 29-35 - Carrying of pistol or revolver without permit prohibited) of which is completely false and presumed to be accurate by Ms. Dirgo. In fact, I was charged and convicted of CT General Statutes 29-38 possession of weapons in a vehicle is a Class D felony punishable by up to 5 years in jail and a fine of up to $5,000.  Additionally, I was never given the opportunity to elaborate or offer any additional information as to any of the past convictions that might have impacted and/or influence the decision to hire me.

C. Complainant's Background Check Report Showed Multiple Serious Convictions

When Respondent received Complainant's background check report from the Connecticut Department of Emergency Services and Public Protection, it revealed that Complainant had multiple serious criminal convictions on record with the State Police Bureau of Identification.

The report showed that on May 8, 1995, Complainant was convicted of larceny in the sixth degree in violation of Conn. Gen. Stat. § 53a-125b, which is a class C misdemeanor.

ANSWER: Sentence $125.00 Fine

On February 25, 1999, Complainant was convicted of interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a, which is a class A misdemeanor. The complainant was also convicted of breach of the peace in the second degree in violation of Conn. Gen. Stat.$ 53a-181, which is a class B misdemeanor.

ANSWER: Sentence $125.00

On March 20, 2001, Complainant was again convicted of interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a and breach of the peace in the second degree in violation of Conn. Gen. Stat.§ 53a-181. Based on these convictions, Complainant was sentenced to six months in jail and other conditions.

**ANSWER: I was not sentenced to six (6) months in jail.  (6) Month (s) Jail (6) Month (s) Susp, 18 Month (s) PROBATION, CONCURRENT.**

Respondent has chosen not to attach Complainant's background check report as it contains sensitive information of Complainant. However, if the EEOC requests a copy of the report, Respondent will provide it promptly.

On May 11, 2006, Complainant was convicted of reckless endangerment in the second degree in violation of Conn. Gen. Stat. § 53a-64. Based on this conviction, Complainant was sentenced to six months in jail and other conditions.

**ANSWER: I was not sentenced to six (6) months in jail.  My sentence was six (6) months in jail, six (6) months suspended, and one (1) year probation.**

On March 19, 2008, Complainant was convicted of threatening in the second degree in violation of Conn. Gen. Stat. § 53a-62. Based on this conviction, Complainant was sentenced to one year in jail and other conditions.

**ANSWER: I was not sentenced to one (1) year in jail.  My sentence was one (1) year in jail, one (1) year suspended, and two (2)years probation.**

On April 2, 2008, Complainant was convicted of failure to appear in the second degree in violation of Conn. Gen. Stat. § 53a-173 and interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a. Based on these convictions, Complainant was sentenced to one year in jail and other conditions.

**ANSWER: I was not sentenced to one (1) year in jail.  My sentence was one (1) year in jail, one (1) year suspended, and two (2)years probation.**

On April 1, 2009, Complainant was convicted of a probation violation in violation of Conn. Gen. Stat.$ 53a-32 and threatening in the second degree in violation of Conn. Gen. Stat. $ 53a-62. Based on this conviction, Complainant was sentenced to four months in jail.

**ANSWER: I was sentenced to four months in jail, concurrent with the July 28, 2009 case sentence of sixty days jail, sixty days parole.**

On July 28, 2009, Complainant was convicted of harassment in the second degree in violation of Conn. Gen. Stat. § 53a-183. Based on this conviction, Complainant was sentenced to three months in jail.

**ANSWER: I was sentenced to three months in jail. Concurrent with the April 1, 2009 case sentence sixty days jail, sixty days parole.**

On July 28, 2009, Complainant was convicted of a probation violation in violation of Conn. Gen. Stat. § 53a-32. Based on this conviction, Complainant was sentenced to one year in jail and other conditions.

**ANSWER: I was not sentenced to one year in jail. My sentence was one year in jail, one year suspended, and two years probation.**

On July 28, 2009, Complainant was also convicted of a felony for having an unregistered weapon in her vehicle in violation of Conn. Gen. Stat. § 29-38. Based on this conviction, Complainant was sentenced to three years in jail and other conditions.

**ANSWER: I was not sentenced to three years in jail for an unregistered weapon in my motor vehicle. Conn. Gen. Stat § 29-38. States weapon in motor vehicle however, it doesn't state anywhere on my criminal record that I was convicted of a firearm.**

On January 6, 2011, Complainant was convicted of a probation violation in violation of Conn. Gen. Stat. §53a-32. Based on this conviction, Complainant was sentenced to eighteen months in jail and other conditions.

**ANSWER: I was not sentenced to eighteen months in jail. I was sentenced to nine months in jail concurrent with the January 10, 2011 case.**

On January 10, 2011, Complainant was convicted of interfering with an officer violating Conn. Gen. Stat. § 53a-167a and inciting to riot in violation of Conn. Gen. Stat.§ 53a-178. Based on these convictions, Complainant was sentenced to nine months in jail.

**ANSWER: I was sentenced to nine months in jail. Concurrent with January 6, 2011 case serving eighteen months in jail.**

Some of the jail sentences discussed above were concurrent.

Page 6, under "D. Rescission of Complainant's Provisional Offer of Hire" states that "On August 17, 2022, Ms. Dirgo received Complainant's criminal background check results.  While the results did not include an automatic disqualifying offense under Connecticut law, it did show multiple serious convictions resulting in jail time.  In accordance with Respondent's Criminal History Record Check Policy, Ms. Dirgo reviewed the multiple convictions and determined that Complainant would not be a good fit for the Company.  In making this determination, Ms. Dirgo considered the nature of Complainant's convictions which included a gun-related offense, reckless endangerment, threatening, larceny, inciting a riot, and harassment, and contrasted them with the clientele that Complainant would be working with. Milford Health's clientele are elderly, vulnerable people, whom Complainant would be working with on a daily basis.  A lot of the time she would be working alone with these patients. The safety of Milford Health's clientele is its number one priority.  Based on all of these considerations, Ms. Dirgo made the determination that Complainant would not be a good fit for the Company.  On said date, Ms. Dirgo informed Complainant that she did not successfully pass the background screening and that because of this she was rescinding the provisional offer of employment."

**ANSWER: Untrue statements by Ms. Dirgo.  I have never been asked nor was I given the opportunity to elaborate or provide additional information with respect to my charges. I was belatedly told via phone that I couldn't be hired because of what just came back on my criminal record overlooking the time lapsed since my offense or sentence from May 8, 1995 to January 10, 2011. However serious or not. I also do not have multiple serious criminal convictions. I have numerous misdemeanor charges that I can only attribute to poor judgment on my part and One serious criminal conviction (please see Page 6, section (D), paragraph 9 where Ms. Dirgo "considered the nature of my convictions which included a gun-related offense," (see insert below from Respondent's position statement) that my convictions included a gun-related offense (CT General Statutes 29-35 - Carrying of pistol or revolver without permit prohibited) of which is completely false and presumed to be accurate by Ms. Dirgo.  In fact, I was charged and convicted of CT General Statutes 29-38 - possession of weapons in a vehicle is a Class D felony punishable by up to 5 years in jail and a fine of up to $5,000. Additionally, I was never given the opportunity to elaborate or offer any additional information as to any of my past convictions that might have impacted and/or influence the decision to hire me.**

Moreover, I would like to draw attention to the Fair Credit Reporting Act (FCRA), which protects individuals from inaccurate records and regulates the process of obtaining and using background check reports. The FCRA ensures that employers adhere to specific obligations, including obtaining written consent from applicants, providing a copy of the background check report, and notifying applicants if adverse employment decisions are made based on the report's contents. It is worth noting that the FCRA also requires background check agencies to conduct reasonable investigations when an applicant disputes the accuracy of the report.

Title VII of the Civil Rights Act of 1964 also plays a significant role in protecting applicants and employees from discrimination in employment practices, including screening and hiring. Title VII prohibits employers from adopting blanket policies that exclude applicants based solely on their criminal records, as such policies may disproportionately impact certain racial and ethnic groups. The Equal Employment Opportunity Commission (EEOC) provides guidance on how employers can appropriately consider an individual's criminal history without engaging in discriminatory practices. This includes considering the nature and gravity of the offense, the time that has passed since the offense or sentence, and the nature of the job itself. The EEOC also advises employers to provide applicants with an opportunity to explain the circumstances surrounding their criminal history and present any mitigating factors.

Connecticut has also enacted protections for job seekers with criminal records, such as the "ban-the-box" law. This law prohibits employers from inquiring about an applicant's criminal history, including arrests, charges, and convictions, on an initial application. However, employers may inquire about criminal history at a later stage in the hiring process, such as during an interview or after making a conditional offer of employment. It is important to note that even if an employer is permitted to inquire about criminal records under certain circumstances, they must provide clear and conspicuous notice to applicants about erasure of records, the impact of pardons or certificates of rehabilitation, and the treatment of applicants with erased records.

I would also like to draw attention to the Substitute House Bill No. 5237, Public Act No. 16-83 specifically sections (d) and (e) as it pertains to this rebuttal.

**AN ACT CONCERNING FAIR CHANCE EMPLOYMENT.**

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. Section 31-51i of the general statutes is repealed and the following is substituted in lieu thereof (Effective January 1, 2017):

(a) For the purposes of this section, "employer" means any person engaged in business who has one or more employees, including the state or any political subdivision of the state.

(b) No employer shall inquire about a prospective employee's prior arrests, criminal charges, or convictions on an initial employment application, unless (1) the employer is required to do so by an

applicable state or federal law, or (2) a security or fidelity bond or an equivalent bond is required for the position for which the prospective employee is seeking employment.

[(b)] (c) No employer or employer's agent, representative, or designee may require an employee or prospective employee to disclose the existence of any arrest, criminal charge, or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o or 54-142a.

[(c)] (d) An employment application form that contains any question concerning the criminal history of the applicant shall contain a notice,

(1) That the applicant is not required to disclose the existence of any arrest, criminal charge or

conviction, the records of which have been erased pursuant to section 46b-146, 54-76o or 54-142a, (2) that criminal records subject to erasure pursuant to section 46b-146, 54-76o or 54-142a are records pertaining to a finding of delinquency or that a child was a member of a family with service needs, an adjudication as a youthful offender, a criminal charge that has been dismissed or nolled, a criminal charge for which the person has been found not guilty or a conviction for which the person

received an absolute pardon, and

(3) that any person whose criminal records have been erased pursuant to section 46b-146, 54-76o, or 54-142a shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

[(d)] (e) No employer or employer's agent, representative, or designee shall deny employment to a prospective employee solely on the basis that the prospective employee had a prior arrest, criminal

charge or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o, or 54-142a or that the prospective employee had a prior conviction for which the prospective employee has received a provisional pardon or certificate of rehabilitation pursuant to section 54-130a, or a certificate of rehabilitation pursuant to section 54-108f.

[(e)] (f) No employer or employer's agent, representative or designee shall discharge, or cause to be discharged, or in any manner discriminate against, any employee solely on the basis that the

employee had, prior to being employed by such employer, an arrest, criminal charge, or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o, or 54-142a or that the employee had, prior to being employed by such employer, a prior conviction for which the employee has received a provisional pardon or certificate of rehabilitation pursuant to section 54-130a, or a certificate of rehabilitation pursuant to section 54-108f.

[(f)] (g) The portion of an employment application form [which] that contains information concerning the criminal history record of an applicant or employee shall only be available to the members of the

personnel department of the company, firm, or corporation or, if the company, firm, or corporation does not have a personnel department, the person in charge of employment, and to any employee or member of the company, firm or corporation, or an agent of such employee or

member, involved in the interviewing of the applicant.

[(g)] (h) Notwithstanding the provisions of subsection [(f)] (g) of this section, the portion of an employment application form [which] that contains information concerning the criminal history record of an applicant or employee may be made available as necessary to persons

other than those specified in said subsection [(f)] (g) by:

(1) A broker-dealer or investment adviser registered under chapter 672a in connection with (A) the possible or actual filing of, or the collection or retention of information contained in, a form U-4 Uniform

Application for Securities Industry Registration or Transfer, (B) the compliance responsibilities of such broker-dealer or investment adviser under state or federal law, or (C) the applicable rules of self-regulatory organizations promulgated in accordance with federal law;

(2) An insured depository institution in connection with (A) the management of risks related to safety and soundness, security or privacy of such institution, (B) any waiver that may possibly or

actually, be sought by such institution pursuant to section 19 of the Federal Deposit Insurance Act, 12 USC 1829(a), (C) the possible or actual obtaining by such institution of any security or fidelity bond, or

(D) the compliance responsibilities of such institution under state or federal law; and

(3) An insurance producer licensed under chapter 701a in connection with (A) the management of risks related to security or privacy of such insurance producer, or (B) the compliance

responsibilities of such insurance producer under state or federal law. [(h)] (i) (1) For the purposes of this subsection: (A) "Consumer reporting agency" means any person who regularly engages, in whole

or in part, in the practice of assembling or preparing consumer reports for a fee, which reports compile and report items of information on consumers that are matters of public record and are likely to have an adverse effect on a consumer's ability to obtain employment, but does not include any public agency; (B) "consumer report" means any written, oral or other communication of information bearing on an individual's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living; and (C) "criminal matters of public record" means information obtained from the Judicial Department relating to arrests, indictments,

convictions, outstanding judgments, and any other conviction information, as defined in section 54-142g.

(2) Each consumer reporting agency that issues a consumer report that is used or is expected to be used for employment purposes and that includes in such report criminal matters of public record

concerning the consumer shall:

(A) At the time the consumer reporting agency issues such consumer report to a person other than the consumer who is the subject of the report, provide the consumer who is the subject of the

consumer report (i) notice that the consumer reporting agency is reporting criminal matters of public record, and (ii) the name and address of the person to whom such consumer report is being issued;

(B) Maintain procedures designed to ensure that any criminal matter of public record reported is complete and up-to-date as of the date the consumer report is issued, which procedures shall, at a

minimum, conform to the requirements set forth in section 54-142e, as amended by this act.

(3) This subsection shall not apply in the case of an agency or department of the United States government seeking to obtain and use a consumer report for employment purposes if the head of the agency or department makes a written finding pursuant to 15 USC

1681b(b)(4)(A). (j) An employee or prospective employee may file a complaint with

the Labor Commissioner alleging an employer's violation of this section.

Sec. 2. Subsection (a) of section 54-142e of the general statutes is repealed and the following is substituted in lieu thereof (Effective from passage):

(a) Notwithstanding the provisions of subsection (e) of section 54-142a and section 54-142c, with respect to any person, including, but not limited to, a consumer reporting agency as defined in subsection [(h)] (i) of section 31-51i, as amended by this act, that purchases criminal matters of public record, as defined in said subsection (h), from the Judicial Department, the department shall make available to such person information concerning such criminal matters of public record that have been erased pursuant to section 54-142a. Such information may include docket numbers or other information that permits the person to identify and permanently delete records that have been erased pursuant to section 54-142a.

Sec. 3. (Effective from passage) (a) There is established a fair chance employment task force to study issues, including, but not limited to, the employment opportunities available to individuals with criminal histories. (b) The task force shall consist of the following members:

(1) One appointed by the speaker of the House of Representatives;

(2) One appointed by the president pro tempore of the Senate;

(3) One appointed by the majority leader of the House of

Representatives;

(4) One appointed by the majority leader of the Senate;

(5) One appointed by the minority leader of the House of

Representatives;

(6) One appointed by the minority leader of the Senate; and

(7) The executive director of the African-American Affairs

Commission, or the executive director's designee.

(c) Any member of the task force appointed under subdivisions, inclusive, of subsection (b) of this section may be a member of the General Assembly. (d) All appointments to the task force shall be made not later than thirty days after the effective date of this section. Any vacancy shall be

filled by the appointing authority. (e) The speaker of the House of Representatives and the president

pro tempore of the Senate shall select two chairpersons of the task force from among the members of the task force. Such chairpersons shall schedule the first meeting of the task force, which shall be held not later than sixty days after the effective date of this section. (f) The administrative staff of the African-American Affairs Commission shall serve as administrative staff of the task force. (g) Not later than January 1, 2017, and January first thereafter, the task force shall submit a report on its findings and offer recommendations for any administrative or legislative action necessary to address such findings to

the joint standing committees of the General Assembly having cognizance of matters relating to labor and the judiciary, in accordance with the provisions of section 11-4a of

the general statutes. The task force shall terminate on the date that it submits its final report or January 1, 2018, whichever is later.

Considering the relevant laws and protections outlined above, I believe I've been discriminated against by Milford Health & Rehabilitation Center. Due to my past criminal conviction, Milford Health has never provided me with the opportunity to explain criminal charges dating from May 8, 1995, to January 10, 2011. Their decision to rescind my position was solely based on my criminal history. They have also failed to provide me with the requested documentation, including a copy of my background check report and a letter explaining the decision to rescind my employment offer. This would have allowed me to ensure the accuracy of the report and address any potential misunderstandings or discrepancies.

I appreciate your attention to this matter and trust that Milford Health and Rehabilitation Center will adhere to the applicable laws and regulations, as well as provide the necessary documentation in a timely manner.

Sincerely,

Gisele Reese

Complainant

Title VII of the Civil Rights Act of 1964 also plays a significant role in protecting applicants and employees from discrimination in employment practices, including screening and hiring. Title VII prohibits employers from adopting blanket policies that exclude applicants based solely on their criminal records, as such policies may disproportionately impact certain racial and ethnic groups. The Equal Employment Opportunity Commission (EEOC) provides guidance on how employers can appropriately consider an individual's criminal history without engaging in discriminatory practices. This includes considering the nature and gravity of the offense, the time that has passed since the offense or sentence, and the nature of the job itself. The EEOC also advises employers to provide applicants with an opportunity to explain the circumstances surrounding their criminal history and present any mitigating factors.

Connecticut has also enacted protections for job seekers with criminal records, such as the "ban-the-box" law. This law prohibits employers from inquiring about an applicant's criminal history, including arrests, charges, and convictions, on an initial application. However, employers may inquire about criminal history at a later stage in the hiring process, such as during an interview or after making a conditional offer of employment. It is important to note that even if an employer is permitted to inquire about criminal records under certain circumstances, they must provide clear and conspicuous notice to applicants about erasure of records, the impact of pardons or certificates of rehabilitation, and the treatment of applicants with erased records.

I would also like to draw attention to the Substitute House Bill No. 5237, Public Act No. 16-83 specifically sections (d) and (e) as it pertains to this rebuttal.

**AN ACT CONCERNING FAIR CHANCE EMPLOYMENT.**

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. Section 31-51i of the general statutes is repealed and the following is substituted in lieu thereof (Effective January 1, 2017):

(a) For the purposes of this section, "employer" means any person engaged in business who has one or more employees, including the state or any political subdivision of the state.

(b) No employer shall inquire about a prospective employee's prior arrests, criminal charges, or convictions on an initial employment application, unless (1) the employer is required to do so by an

applicable state or federal law, or (2) a security or fidelity bond or an equivalent bond is required for the position for which the prospective employee is seeking employment.

[(b)] (c) No employer or employer's agent, representative, or designee may require an employee or prospective employee to disclose the existence of any arrest, criminal charge, or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o or 54-142a.

[(c)] (d) An employment application form that contains any question concerning the criminal history of the applicant shall contain a notice,

(1) That the applicant is not required to disclose the existence of any arrest, criminal charge or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o or 54-142a, (2) that criminal records subject to erasure pursuant to section 46b-146, 54-76o or 54-142a are records pertaining to a finding of delinquency or that a child was a member of a family with service needs, an adjudication as a youthful offender, a criminal charge that has been dismissed or nolled, a criminal charge for which the person has been found not guilty or a conviction for which the person received an absolute pardon, and

(3) that any person whose criminal records have been erased pursuant to section 46b-146, 54-76o, or 54-142a shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

[(d)] (e) No employer or employer's agent, representative, or designee shall deny employment to a prospective employee solely on the basis that the prospective employee had a prior arrest, criminal charge or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o, or 54-142a or that the prospective employee had a prior conviction for which the prospective employee has received a provisional pardon or certificate of rehabilitation pursuant to section 54-130a, or a certificate of rehabilitation pursuant to section 54-108f.

[(e)] (f) No employer or employer's agent, representative or designee shall discharge, or cause to be discharged, or in any manner discriminate against, any employee solely on the basis that the employee had, prior to being employed by such employer, an arrest, criminal charge, or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o, or 54-142a or that the employee had, prior to being employed by such employer, a prior conviction for which the employee has received a provisional pardon or certificate of rehabilitation pursuant to section 54-130a, or a certificate of rehabilitation pursuant to section 54-108f.

[(f)] (g) The portion of an employment application form [which] that contains information concerning the criminal history record of an applicant or employee shall only be available to the members of the personnel department of the company, firm, or corporation or, if the company, firm, or corporation does not have a personnel department, the person in charge of employment, and to any employee or member of the company, firm or corporation, or an agent of such employee or member, involved in the interviewing of the applicant.

[(g)] (h) Notwithstanding the provisions of subsection [(f)] (g) of this section, the portion of an employment application form [which] that contains information concerning the criminal history record of an applicant or employee may be made available as necessary to persons other than those specified in said subsection [(f)] (g) by:

(1) A broker-dealer or investment adviser registered under chapter 672a in connection with (A) the possible or actual filing of, or the collection or retention of information contained in, a form U-4 Uniform

# EXHIBIT H

National Health Care Associates Offer Letter (August 15, 2022).

Attached hereto.



National
Health Care
Associates Inc.

Aug 15, 2022

Gisele Reese
33 Roosevelt Drive 304
Derby, Connecticut 06418

Dear Gisele,

We are pleased to offer you the position of CNA Full-Time with Milford. We are looking forward to you becoming a valuable addition to our team. To ensure our mutual understanding, the terms and conditions of your at-will employment are outlined below:

| | |
|---|---|
| **Position Title:** | CNA Full-Time |
| **Start Date:** | Sep 23, 2022 |
| **Base Salary:** | USD $19.00 per hour |
| **Standard Hours:** | 32 |
| **Shift:** | 3p-11p |
| **Position Type:** | Full Time |

As a non-exempt employee, you will be eligible for overtime pay.

**Benefits:** You may participate in fringe benefits as established by written Company policy. Please refer to the benefits summary.

Other terms and guidelines for your employment are set forth in our employee handbook, which will be provided to you on your first day of employment.

This offer is contingent upon:
• The successful completion of a background check
• Successful reference checks

Nothing in this offer of employment should be considered contractual. Specified terms and conditions of employment are subject to change at any time during your employment. Your employment is "at will" and is not for a specific period of time. As a result, you are free to resign at any time, for any reason or no reason. Likewise, the facility is free to end its employment relationship with you at any time with or without cause.

We are looking forward to your acceptance of our offer of at-will employment. If you have any questions, please do not hesitate to let me know.

Sincerely,

Joanne Jinete
Milford